## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**ANGELICA MARIE TRUJILLO,**

      **Plaintiff,**

     **vs.**                         **Civ. No. 23-958 KWR/JFR**

**MARTIN O'MALLEY, Commissioner,**
**Social Security Administration,**

      **Defendant.**

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

    **THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 14)[2] filed January 2, 2024, in connection with Plaintiff's *Opposed Motion to Reverse or Remand,* filed March 14, 2024.  Doc. 19.  On June 10, 2024, Defendant filed a Response.  Doc. 25.  On June 24, 2024, Plaintiff filed a Reply.  Doc. 26.  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c).  Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds that Plaintiff's Motion is not well taken and recommends that it be **DENIED**.

### I.  Background and Procedural Record

    Plaintiff Angelica Marie Trujillo ("Ms. Trujillo") alleges that she became disabled on April 1, 2017, at the age of forty years and ten months, because of post-traumatic stress disorder

---

[1] On November 2, 2023, United States District Judge Key W. Riggs entered an Order of Reference referring this case to the undersigned to conduct hearings, if warranted, including evidentiary hearings and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case.  Doc. 10.

[2] Hereinafter, the Court's citations to Administrative Record (Doc.14), which is before the Court as a transcript of the administrative proceedings, are designated as "Tr."

("PTSD"), severe anxiety, severe depression, headaches, body aches, and panic attacks.  Tr. 314.
Ms. Trujillo completed a two-year associate degree in early childhood education and has worked
as a preschool teacher and aide.  Tr. 315.  Ms. Trujillo stopped working on November 8, 2015,
because of her medical conditions.  Tr. 314.

Ms. Trujillo previously filed two applications for Social Security Disability Insurance
Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq*.,
which were denied in October 2015 and January 2017, respectively.  Tr. 77.  Ms. Trujillo filed
again on September 7, 2018, alleging disability beginning November 8, 2015, which date was
later amended to April 1, 2017.  Tr. 39, 272-76.  On November 30, 2018, Ms. Trujillo's
application was denied.  Tr. 75, 76-92, 170-73.  On May 1, 2019, Ms. Trujillo's application was
denied at reconsideration.  Tr. 93,94-112, 177-83.  Ms. Trujillo requested a hearing before an
Administrative Law Judge ("ALJ"), which was held on June 25, 2020.  Tr. 142-64.  Ms. Trujillo
appeared before ALJ Lillian Richter with her then-representative Roy Archuleta.  *Id.*  On
January 7, 2021, ALJ Richter issued an unfavorable decision.  Tr. 139-63.  On June 2, 2021, the
Appeals Council issued its decision denying Ms. Trujillo's request for review and upholding the
ALJ's final decision.  Tr. 1456-59.  On July 29, 2021, Ms. Trujillo timely filed a Complaint
seeking judicial review of the Commissioner's final decision.  Tr. 1469-71 (USDC NM Civ. No.
21-702 CG, Doc. 1).

On June 28, 2022, Magistrate Judge Carmen Garza, Presiding by Consent, remanded
Ms. Trujillo's case for further consideration.  Tr. 1472-91.  She found that ALJ Richter failed to
properly consider evidence regarding Ms. Trujillo's mental health such that the court was left
"with no guidance to perform a meaningful review of ALJ Richter's analysis of (1) the proper

weight to afford the opinions of the medical sources on Ms. Trujillo's mental limitations, or (2) Ms. Trujillo's mental limitations in the context of her RFC."  Tr. 1490.

On remand, ALJ Michael Leppala held a second hearing on August 1, 2023.  Tr. 1428-55.  Ms. Trujillo was represented at that hearing by Attorney Benjamin Decker.[3]  *Id.*  On September 14, 2023, ALJ Leppala issued an unfavorable decision.  Tr. 1394-1417.  Ms. Trujillo did not seek review from the Appeals Council and filed a timely appeal with the Court on November 1, 2023.  Doc. 1.

## II.  <u>Applicable Law</u>

### A.      <u>Disability Determination Process</u>

An individual is considered disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months".  42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also* 42 U.S.C. § 1382(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals).  The Social Security Commissioner has adopted the familiar five-step sequential analysis to determine whether a person satisfies the statutory criteria as follows:

> (1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[4]  If the claimant is engaged in substantial gainful activity, she is not disabled regardless of her medical condition.
>
> (2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s).  If the claimant does not have an impairment(s) or

---

[3] Attorney Decker also is representing Ms. Trujillo in these proceedings.

[4] Substantial work activity is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a).  "Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before."  *Id.*  "Gainful work activity is work activity that you do for pay or profit."  20 C.F.R. §§ 404.1572(b).

combination of impairments that is severe and meets the duration requirement, she is not disabled.

(3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement.  If so, a claimant is presumed disabled.

(4) If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform her "past relevant work."  Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work.  Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands.  A claimant who is capable of returning to past relevant work is not disabled.

(5) If the claimant does not have the RFC to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience.  If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).  The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5, 107 S.Ct. 2287, 2294, n.5, 96 L.Ed.2d 119 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy.  *Id.*  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

B.    <u>Standard of Review</u>

The Court reviews the Commissioner's decision to determine whether the factual

findings are supported by substantial evidence in the record and whether the correct legal

standards were applied.  42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir.

2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).  A decision is based on

substantial evidence where it is supported by "relevant evidence [that] a reasonable mind might

accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118.  A decision "is not

based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley,*

373 F.3d at 1118, or if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371,

1374 (10th Cir. 1992).  Therefore, although an ALJ is not required to discuss every piece of

evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the

[ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient

particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).  Further, the decision

must "provide this court with a sufficient basis to determine that appropriate legal principles

have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005).  In undertaking

its review, the Court may not "reweigh the evidence" or substitute its judgment for that of the

agency.  *Langley*, 373 F.3d at 1118.

### III.  <u>Analysis</u>

The ALJ determined that Ms. Trujillo met the insured status requirements of the Social

Security Act through December 31, 2020, and that she had not engaged in substantial gainful

activity since her amended alleged onset date through her date last insured.  Tr. 1400.  He found

that Ms. Trujillo had severe impairments of diabetes mellitus type 2, headache disorder, obesity,

anxiety, depression, and post-traumatic stress disorder.  *Id.*  The ALJ further found that

5

Ms. Trujillo had nonsevere impairments of hypothyroidism, sleep apnea, shoulder contusion, respiratory infection, asthma, vitamin insufficiency, sinusitis and otitis media. *Id.* The ALJ determined that Ms. Trujillo's impairments did not meet or equal in severity any of the listings described in the governing regulations, 20 CFR Part 404, Subpart P, Appendix 1. Tr. 1400-04. Accordingly, the ALJ proceeded to step four and found that Ms. Trujillo had the residual functional capacity to perform light work as defined in 20 CFR §§ 404.1567(b) except that

> Claimant is capable of occasionally lifting and/or carrying 20 pounds, frequently lifting and/or carrying ten pounds, standing and/or walking for about six hours in an eight-hour workday, and sitting for six hours in an eight-hour workday, all with normal breaks. The Claimant is further limited to occasionally stooping, kneeling, crouching, and crawling. The Claimant is limited to frequent exposure to pulmonary irritants, such as fumes, noxious odors, dusts, gases, and poorly ventilated hazards, and occasional exposure to unprotected heights, dangerous machinery, and moving machinery. The Claimant can understand, carry out, and remember simple instructions and make commensurate work-related decisions, respond appropriately to supervision, coworkers, and work situations, deal with occasional changes in work setting, and maintain concentration, persistence, and pace, for up to and including two hours at a time, with normal breaks throughout a normal workday. The Claimant is limited to occasional interaction with coworkers and supervisors. The Claimant cannot interact with the public, but may have incidental contact with the public during task execution.

Tr. 1404. The ALJ determined that Ms. Trujillo was unable to perform her past relevant work, but that considering her age, education, work experience, and residual functional capacity, that through the date last insured there were jobs that existed in significant numbers in the national economy Ms. Trujillo could perform.[5] Tr. 1415-17. The ALJ determined, therefore, that Ms. Trujillo was not disabled. Tr. 1417.

---

[5] The VE expert identified representative occupations of Mail Clerk (DOT code 209.687-026, light exertion, unskilled, SVP 2, 47,000 jobs nationally); Folder (DOT code 369.687-018, light exertion, unskilled, SVP 2, 85,000 jobs nationally); and Sorter (DOT code 361.687-014, light exertion unskilled SVP 2, 42,000 jobs nationally). Tr. 1417.

A.    **Relevant Medical Evidence Related to Ms. Trujillo's Ability To Do Work-Related Mental Activities**

1.    **Vidya Subramanian, M.D.**

On January 20, 2017, Ms. Trujillo presented to Vidya Subramanian, M.D., with complaints of anxiety and depression.  Tr. 490-93.  Ms. Trujillo reported the onset of symptoms several years earlier and that she was initially stable on medications.  *Id.*  Ms. Trujillo reported, however, that with medication changes her anxiety and depression had increased.  *Id.* Dr. Subramanian indicated a negative mental status exam.[6]  *Id.*  Dr. Subramanian assessed major depressive disorder, single episode, moderate, and made adjustments to Ms. Trujillo's medications.  *Id.*

Ms. Trujillo saw Dr. Subramanian four more times in 2017.  Tr. 468-84.  Ms. Trujillo reported doing well on medications.[7]  Tr. 475, 481.  On August 7, 2017, Ms. Trujillo reported an increase in anxiety and onset of lip smacking.[8]  Tr. 471-72.  Dr. Subramanian's mental status exams at each visit were consistently negative.  Tr. 470-71, 477-78, 483.  On August 14, 2017, Dr. Subramanian referred Ms. Trujillo to Adult Behavioral Health.  Tr. 471.

2.    **Presbyterian Medical Services – Adult Behavioral Health**

a.    **LCSW Cirilo Sandoval**

On September 7, 2018, Ms. Trujillo presented to Presbyterian Medical Services Behavioral Health.  Tr. 668-73.  LCSW Cirilo Sandoval administered an initial intake.  *Id.* Ms. Trujillo reported a history of anxiety, depression and post-traumatic stress disorder.  *Id.*

---

[6] Exam included Dr. Subramanian's observations as to posture and motor behavior; dress, grooming, personal hygiene; facial expression; speech; mood; coherency and relevance of thought; thought content; perceptions; orientation; attention and concentration; information; vocabulary; abstract reasoning; and judgment.  Tr. 493.

[7] Medications included combination of Zoloft, Abilify, and Buspar.  Tr. 481.

[8] Dr. Subramanian assessed the lip smacking as secondary to Abilify.  Tr. 474.

Behavioral health screening questionnaires were positive for each.  *Id.*  LCSW Sandoval noted "generally normal" observations on mental status exam.[9]  *Id.*  She also noted Ms. Trujillo had a depressed, anxious mood; constricted affect; pressured speech; circumstantial thought process; average intelligence; and that her perception, thought content, cognition, insight and judgment were all within normal limits.  *Id.*  LCSW Sandoval assigned principal diagnoses of PTSD, generalized anxiety disorder, and panic disorder.  *Id.*  She referred Ms. Trujillo for medication management and individual therapy.  *Id.*

### b.    CNP Edward R. Lobaugh

On October 10, 2018, Ms. Trujillo presented to Edward R. Lobaugh, CNP, for psychiatric evaluation and medication management.  Tr. 733-38.  CNP Lobaugh noted that Ms. Trujillo reported anxiety, agitation, anhedonia, hopelessness and mood swings.  *Id.*  He noted on physical exam that Ms. Trujillo's psychiatric findings were otherwise "normal," *i.e,* she was well developed, appeared age appropriate, oriented, had appropriate and noncompulsive behavior, a sufficient fund of knowledge and language, appropriate affect, normal insight, normal judgment, and normal attention span and concentration.  *Id.*  CNP Lobaugh's observations on mental status exam were noted as "within normal limits."[10]  *Id.*  He also noted on mental status exam that Ms. Trujillo had a depressed, anxious mood; full affect; clear speech; logical thought process; depressive thought content; average intelligence; impairment of attention/concentration; partial insight; mildly impaired ability to make reasonable decisions; and perception within normal

---

[9] Observations included appearance, build/stature, posture, eye contact, activity, and attitude toward examiner.  Tr. 670-71.

[10] Id.

limits.  *Id.*  CNP Lobaugh made certain medication adjustments related to Ms. Trujillo's

diagnoses of PTSD, generalized anxiety disorder, and panic disorder.  *Id.*

 Ms. Trujillo saw CNP Lobaugh ten times from late 2018 through 2019 for medication

management.  Tr. 739-66, 780-84, 790-99, 829-34.  CNP Lobaugh's notes indicate that on

January 2, 2019, Ms. Trujillo reported feeling less depressed and anxious and engaging in better

self-care.  Tr. 747.  On February 26, 2019, Ms. Trujillo reported feeling more hopeful, that

medications were helping, that she was having fewer panic attacks, and that her mood and sleep

were improved.  Tr. 751.  On April 8, 2019, Ms. Trujillo reported increased anxiety, racing

thoughts, and picking her skin.[11]  Tr. 765.  On May 6, 2019, Ms. Trujillo reported increased

stress related to her daughter's relapse with drugs.  Tr. 758.  She reported "staying busy" to

maintain some distraction.  *Id.*  On. June 24, 2019, Ms. Trujillo reported intense anxiety along

with panic.  Tr. 775.  On September 26, 2019, Ms. Trujillo reported some improvement with

medication Rexulti.  Tr 795.  On December 5, 2019, Ms. Trujillo reported feeling "tired and a

little sad," and that Rexulti was helping.  Tr. 829.

 CNP Lobaugh's general and specific observations on physical and mental status exams at

each of the ten follow-up visits were generally consistent with those he made initially on

October 10, 2018, with only slight changes in late 2019 in which CNP Lobaugh indicated that

Ms. Trujillo's cognition, insight and judgment were within normal limits.  Tr. 742, 746-47, 750-

51, 755, 760, 764-65, 782, 792, 797-98, 831.

 On June 24, 2019, CNP Lobaugh prepared a To Whom It May Concern letter on

Ms. Trujillo's behalf as follows:

---

[11] CNP Lobaugh noted that Ms. Trujillo reported that her daughter had relapsed and was breaking into Ms. Trujillo's home, and that this was a significant stressor.  Tr. 765.

Angelica Trujillo DOB 06/05/1976 has been seen since October 2018.  She is being treated for Chronic Post Traumatic Stress Disorder, Anxiety and Panic Attacks. She has made some strides in improvement but still suffers from severe anxiety, moderate hypervigilance, irritability and mood changes.  This affects her ability to concentrate, stay on task, complete tasks and her ability to attend work.  Due to lack of energy and dysthymia she is not able to engage in a regular employment.  Her anxiety prevents her ability to cope and make decisions, follow regular routines.

Tr. 828.

### c.     LMHC Emily Everhart

On June 14, 2019, LMHC Emily Everhart prepared a To Whom It May Concern letter on

Ms. Trujillo's behalf as follows:

Angelica Trujillo has attended (15) individual mental health therapy sessions with me beginning in late November 2018.  She is attentive, receptive, cooperative, articulate and engaged during session.  Based on my clinical observation and per client report – Angelica experiences significant functional impairment in her daily life resultant from her PTSD and anxiety symptomology.  It is my opinion that she would be appropriate for psychiatric disability.  Please feel free to contact me with any further questions.

Tr. 827.

On January 13, 2020, LMHC Everhart prepared a second To Whom It May Concern

letter on Mr. Trujillo's behalf as follows:

Angelica Trujillo has been an individual therapy client of mine since late November 2018.  She is attentive, receptive, cooperative, articulate and engaged during session.  Based on my clinical observation and per client report – Angelica experiences significant functional impairment in her daily life resultant from her PTSD and anxiety symptomology.  While I have observed positive progress during the span of our treatment together, it is my opinion that she is currently appropriate for psychiatric disability due to the severity of her symptoms.  Please feel free to contact me with any further questions.

Tr. 844.

On January 13, 2020, LMHC Everhart also prepared a *Mental Residual Functional*

*Capacity Questionnaire* on Ms. Trujillo's behalf.  Tr. 845-49.  LMHC Everhart noted that

Ms. Trujillo "consistently exhibits symptoms of significant PTSD, anxiety and depression:

10

compulsive and destructive attempts to self soothe, anxiety attacks, anhedonia, emotional

instability." Tr. 845.  LMHC Everhart noted signs and symptoms of (1) anhedonia or pervasive

loss of interest in almost all activities; (2) appetite disturbance with weight change; (3) decreased

energy; (4) feelings of guilt or worthlessness; (5) impairment in impulse control; (6) generalized

persistent anxiety; (7) mood disturbances; (8) recurrent and intrusive recollections of a traumatic

experience, which are a source of marked distress; (9) persistent disturbances of mood or affect;

(10) recurrent obsessions or compulsion which are a source of marked distress; (11) emotional

withdrawal or isolation; (12) disorientation to time and place; (13) emotional lability;

(14) vigilance and scanning; (15) easy distractibility; and (16) recurrent severe panic attacks

manifested by a sudden unpredictable onset of intense apprehension, fear, terror, and sense of

impending doom occurring on the average of at least once a week.  Tr. 846.

      LMHC Everhart rated Ms. Trujillo's ability to do work-related mental activities for

unskilled work as follows:  Ms. Trujillo has an *unlimited or very good ability* to (1) understand

and remember very short and simple instructions and (2) carry out very short and simple

instructions.  Tr. 847.  Ms. Trujillo has a *limited but satisfactory ability* to (1) remember work-

like procedures; (2) maintain attention for two hour segment; (3) make simple work-related

decisions; (4) ask simple questions or request assistance; (5) accept instructions and respond

appropriately to criticism from supervisors; (6) get along with co-workers or peers without

unduly distracting them or exhibiting behavioral extremes; and (7) be aware of normal hazards

and take appropriate precautions.  Tr. 847-48.  Ms. Trujillo has a *seriously limited, but not*

*precluded ability* to (1) sustain an ordinary routine without special supervision; (2) work in

coordination with or proximity to others without being unduly distracted; and (3) respond

appropriately to change in a routine work setting.  *Id.*  Ms. Trujillo would be *unable to meet*

*competitive standards in her ability* to (1) maintain regular attendance and be punctual within customary, usually strict tolerance; (2) complete a normal workday and workweek without interruptions from psychologically based symptoms; (3) perform at a consistent pace; and (4) deal with normal work stress. *Id.*

LMHC Everhart anticipated that Ms. Trujillo's impairments would cause her to be absent from work more than four days per month. Tr. 849. LMHC Everhart indicated that the earliest date Ms. Trujillo's symptoms and limitations applied was November 26, 2018. *Id.*

### d.   Stephen Lynn Mason, PMHNP

On January 27, 2020, Ms. Trujillo presented to Stephen Lynn Mason, PMHNP, for medication management. Tr. 1316-22. Ms. Trujillo reported ongoing depression and anxiety, adequate control of symptoms, six hours of sleep a night, and a good appetite. *Id.* On physical exam PMHNP Mason noted that Ms. Trujillo was anxious and that all other psychiatric findings were "normal."[12] *Id.* PMHNP Mason noted general observations on mental status exam as "within normal limits."[13] *Id.* He also noted on mental status exam that Ms. Trujillo had a depressed, anxious mood; full affect; clear speech; logical thought process; average intelligence; and that her thought content, cognition, insight, and judgment were all within normal limits. *Id.*

---

[12] Normal psychiatric findings included:

> [o]riented to time, place, person & situation. No agitation. No anhedonia. Appropriate mood and affect. Behavior is appropriate for age. No compulsive behavior. Sufficient fund of knowledge. Sufficient language. Patient it not in denial. Not euphoric. Not fearful. No flight of ideas. Not forgetful. No grandiosity. No hallucinations. Not hopeless. Appropriate affect. No increased activity. No memory loss. No mood swings. No obsessive thoughts. Not paranoid. Normal insight. Normal judgment. Normal attention span and concentration. No pressured speech. No suicidal ideation.

Tr. 1319.

[13] General observations included appearance, build/stature, posture, eye contact, activity, and attitude toward examiner. Tr. 1320.

PMHNP Mason made certain medication adjustments and instructed Ms. Trujillo to bring all medications to her appointments for medicine reconciliation. *Id.*

Ms. Trujillo saw PMHNP Mason on March 27, 2020, May 27, 2020, and on June 26, 2020. Tr. 1323-26, 1327-30, 1331-33. On March 27, 2020, Ms. Trujillo reported anxious thoughts, difficulty relaxing, irritability, panic attacks and restlessness. Tr. 1323. PMHNP Mason noted that Ms. Trujillo was cooperative and that her mental status exam was "unremarkable." Tr. 1324. On May 27, 2020, Ms. Trujillo reported her symptoms were fairly controlled and that functioning was "not difficult at all." Tr. 1327. PMHNP Mason noted that Ms. Trujillo's mental status exam was "unremarkable." Tr. 1328. PMHNP Mason also noted that Ms. Trujillo's depression was in full remission. Tr. 1329. On June 26, 2020, Ms. Trujillo reported her symptoms were fairly controlled and that functioning was "somewhat difficult." Tr. 1331. PMHNP did not administer a mental status exam on this date and no medication changes were noted. Tr. 1332.

### 3.    <u>Scott Walker, M.D.</u>

On November 2, 2018, nonexamining State agency psychological consultant Scott Walker M.D., reviewed the medical evidence record at the initial level of review.[14] Tr. 67-72. Dr. Walker prepared a Psychiatric Review Technique ("PRT")[15] and rated the degree of Ms. Trujillo's functional limitation in the area of understanding, remembering or applying

---

[14] Dr. Walker indicated he reviewed treatment notes from various providers generated from 2015 through 2018. Tr. 82-83. Providers included CSV Centralized, Presbyterian Healthcare Services, and Valley Community Health Center. *Id.* Dr. Walker also reviewed Ms. Trujillo's Function Report. *Id.*

[15] "The psychiatric review technique described in 20 CFR 404.1520a and 416.920a and summarized on the Psychiatric Review Technique Form (PRTF) requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8p, 1996 WL 374184, at *4.

information as *mild*; in the area of interacting with others as *moderate*; in the area of maintaining

concentration, persistence or pace as *moderate*, and in the area of adapting or managing oneself

as *moderate*.  Tr. 82.  Dr. Walker explained that

> The claimant has struggled with anxiety, depression and more recently PTSD for
> some time.  She reports she watched her daughter's boyfriend die, is currently
> caring for her daughter's children and feels depressed all the time.  Most of the time
> period her symptoms have been at least partially controlled with medications.  She
> may not be able to do her prior teaching work, but it does not appear she has a
> complete inability to function in a work setting.

Tr. 83.

Dr. Walker also prepared a Mental Residual Functional Capacity Assessment

("MRFCA") in which he found in Section I that Ms. Trujillo had *no understanding or memory*

*limitations*.  Tr. 88-90.  Dr. Walker found Ms. Trujillo had *no evidence of limitation* in her ability

to (1) carry out very short and simple instructions and (2) make simple work-related decisions.

*Id.*  He also found that Ms. Trujillo was *not significantly limited* in her ability to (1) sustain an

ordinary routine without special supervision; (2) work in coordination with or in proximity to

others without being distracted by them; (3) ask simple questions or request assistance; (4) get

along with coworkers or peers without distracting them or exhibiting behavioral extremes; (5)

maintain socially appropriate behavior and to adhere to basic standards of neatness and

cleanliness; (6) be aware of normal hazards and take appropriate precautions; and (7) set realistic

goals or make plans independently of others.  *Id.*  Finally, Dr. Walker found that Ms. Trujillo

was *moderately limited* in her ability to (1) carry out detailed instructions; (2) maintain attention

and concentration for extended periods; (3) perform activities within a schedule, maintain regular

attendance, and be punctual within customary tolerance; (4) complete a normal workday and

workweek without interruptions from psychologically based symptoms and to perform at a

consistent pace without an unreasonable number and length of rest periods; (5) interact

appropriately with the general public; (6) accept instructions and respond appropriately to

criticism from supervisors; (7) respond appropriately to changes in the work setting; and

(8) travel in unfamiliar places or use public transportation.  *Id.*

In Section III of the MRFCA, Dr. Walker assessed that Ms. Trujillo

> can understand, remember and carry out detailed but not complex instructions, make decisions, attend and concentrate for two hours at a time, make decisions that require quick response.  The claimant can interact superficially with co-workers and supervisors and respond appropriately to changes in a work setting.

*Id.*

### 4.   John Sturgis, Ph.D.

On November 2, 2018, nonexamining State agency psychological consultant John

Sturgis, Ph.D., reviewed the medical evidence record at reconsideration.  Tr. 102-03, 108-110.

Dr. Sturgis noted that Ms. Trujillo was claiming worsening insomnia, depression, and anxiety

beginning in October 2018.  Tr. 103.  Dr. Sturgis prepared a PRT and rated the degree of

Ms. Trujillo's functional limitation in the area of understanding, remembering or applying

information as *moderate*; in the area of interacting with others as *moderate*; in the area of

maintaining concentration, persistence or pace as *moderate*, and in the area of adapting or

managing oneself as *moderate*.  Tr. 102.  Dr. Sturgis explained that the medical evidence record

from Presbyterian Medical Services dated February 26, 2019,

> shows visit for medication management, symptoms are controlled with improvement of initial symptoms.  Denies SI, feels more hopeful this week, medications are helping and she does not want to change dose, no side effect.  Exam notes average eye contract, activity was slowed, cooperative, mood was depressed and anxious, affect was full, speech was clear, thought process was logical, perception as normal, no hallucinations or delusions, cognition and judgment were normal.

Tr. 103.  Dr. Sturgis further noted that

> 3rd party ADL's dated 3/20/2019 indicate she needs reminder for personal care, can prepare meals and do household chores with encouragement. Does not go out alone, can drive and shop in stores. Able to manage her own finances. No interest in hobbies. Has difficulties with memory.

*Id.* Dr. Sturgis concluded that

> The full extent of functional allegations at RECON are not consistent with the current TP MER. However, the preponderance of the evidence does establish a severe mental impairment and moderate functional limitations.

*Id.*

Dr. Sturgis also prepared a MRFCA in which he found in Section I that Ms. Trujillo had *no evidence of limitation* in her ability to (1) carry out very short and simple instructions and (2) make simple work-related decisions. Tr. 108-110. He also found that Ms. Trujillo was *not significantly limited* in her ability to (1) remember locations and work-like procedures; (2) understand and remember very short and simple instructions; (3) sustain an ordinary routine without special supervision; (4) work in coordination with or in proximity to others without being distracted by them; (5) ask simple questions or request assistance; (6) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (7) maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; (8) be aware of normal hazards and take appropriate precautions; and (9) set realistic goals or make plans independently of others. *Id.* Finally, Dr. Sturgis found that Ms. Trujillo was *moderately limited* in her ability to (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) maintain attention and concentration for extended periods; (4) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; (5) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (6) interact appropriately with the general public; (7) accept instructions and respond

16

appropriately to criticism from supervisors; (8) respond appropriately to changes in the work

setting; and (9) travel in unfamiliar places or use public transportation.  *Id.*

In Section III of the MRFCA, Dr. Sturgis assessed that Ms. Trujillo

can understand, remember and carry out detailed but not complex instructions, make decisions, attend and concentrate for two hours at a time, make decisions that require quick response.  The claimant can interact superficially with co-workers and supervisors and respond appropriately to changes in a work setting.

*Id.*

### 5. John P. Owen, Ph.D.

On October 12, 2020, Ms. Trujillo presented via video to NM DDS consultative examiner

John P. Owen, Ph.D., for a mental status examination.  Tr. 1389-92.  Ms. Trujillo reported

alleged impairments of PTSD, severe anxiety, severe depression, headaches, body aches, and

panic attacks.  *Id.*  Dr. Owen took psychosocial, employment, substance abuse, and mental health

histories.  *Id.*  Dr. Owen observed that Ms. Trujillo was neatly groomed, cooperative,

overweight, understood simple questions and instructions, had clear and coherent speech, flat

affect, depressed mood, oriented to time, place and person, and average mental ability.  *Id.*

Dr. Owen administered a Mini-Mental State Examination on which Ms. Trujillo scored 29 out of

30 maximum points.  *Id.*  Dr. Owen's diagnostic impressions included (1) PTSD with panic

attacks; (2) major depressive disorder, provisional; (3) social anxiety disorder; and (4) r/o

generalized anxiety disorder.  *Id.*  Dr. Owen summarized that

Ms. Trujillo has frequent startled responses to stimuli associated with her past trauma.  She frequently feels others are judging her negatively or laughing at her. She is very concerned about her weight and appearance to others.  She frequently misreads or misinterprets the intent or behaviors of others.  She is depressed most days and finds very little pleasure in life.

Tr. 1391.

Dr. Owen assessed that Ms. Trujillo has *no difficulty* in her ability to (1) understand and remember detailed or complex instructions; (2) understand and remember very short and simple instructions; (3) carry out instructions; and (4) work without supervision.  *Id.*  He assessed that Ms. Trujillo has a *mild to moderate difficulty* in her ability to (1) attend and concentrate.  *Id.* Dr. Owen assessed that Ms. Trujillo has a *moderate difficulty* in her ability to (1) interact with supervisors; and (2) adapt to changes in the workplace.  *Id.*  Finally, Dr. Owen assessed that Ms. Trujillo has a *moderate to marked difficulty* in her ability to (1) persist at tasks; (2) interact with the public; (3) interact with co-workers; and (4) use public transportation.  *Id.*  Dr. Owen indicated that Ms. Trujillo would need assistance managing funds.  *Id.*

### B.   <u>Arguments</u>

In support of her Motion, Ms. Trujillo first argues that the ALJ, having found the nonexamining psychological consultants' assessments of Ms. Trujillo's ability to do work-related mental activities persuasive, failed to incorporate their shared opinion that Ms. Trujillo "suffers moderate limitations responding appropriately to supervision."  Doc. 19 at 21. Ms. Trujillo argues that the ability to respond appropriately to supervisors is a critical ability necessary to perform any job and that the ALJ's failure to offer an explanation for diverging from the nonexamining psychological consultants' assessments is significant error requiring remand.  *Id.*

Next, Ms. Trujillo argues that the ALJ failed to meaningfully consider "consistency" when evaluating the persuasiveness of LMCH Emily Everhart's medical source statement for three reasons.  *Id.* at 21-24.  First, Ms. Trujillo argues that LMCH Everhart's medical source statement is consistent with numerous other "objective findings" in the record.  *Id.*  Ms. Trujillo cites CNP Edward R. Lobaugh's mental status exams in which he assessed "poor insight, poor

judgment, impaired attention/concentration, anhedonia, paranoia, mood swings, apathetic appearance, and slowed activity." *Id.*  Ms. Trujillo argues that CNP Lobaugh's mental status exams are consistent with LMCH Everhart's clinical findings of anhedonia and emotional instability and her assessment that Ms. Trujillo is "seriously limited but not precluded from (1) sustaining an ordinary routine without special supervision; (2) work[ing] with others; and (3) respond[ing] appropriately to changes in routine work setting." *Id.*

Second Ms. Trujillo argues that the ALJ's position that LMHC Everhart's opinions are "vague" or that they relate to legal conclusions reserved for the Administration "is a pretextual subterfuge to avoid the burden of meaningful consideration." *Id.*  Ms. Trujillo argues that LMHC Everhart's characterization of limitations as "serious" or "unable to meet competitive standards" are specifically defined within the medical source statement such that they are "plainly not vague." *Id.*  Even if so, Ms. Trujillo argues that the terms "impute severe limitation in these areas." *Id.*  Ms. Trujillo argues the ALJ's error in this regard is clearly prejudicial because the areas in which LMHC Everhart opines Ms. Trujillo is impaired are all critical abilities necessary to perform any job. *Id.*

And third, Ms. Trujillo argues that the ALJ fails to discuss any of the medical evidence (other than Ms. Trujillo's diagnoses with generalized anxiety and panic attacks) when assessing LMHC Everhart's opinion or meaningfully tie his assessment to any evidence of record. *Id.*  Ms. Trujillo argues that the ALJ's evaluation of LMHC Everhart's opinion is "an example of the rote conclusory analysis that preclude this court from meaningfully determining whether the decision is supported by substantial evidence." *Id.*  On this ground, Ms. Trujillo argues this case merits remand. *Id.*

In response to Ms. Trujillo's first argument, the Commissioner contends that the ALJ's RFC incorporated all limitations assessed by Dr. Walker and Dr. Sturgis and specifically limits Ms. Trujillo's interaction with supervisors.  Doc. 25 at 6-7.  The Commissioner contends, therefore, that Ms. Trujillo's argument as to this issue is misplaced.  *Id.*

As for Ms. Trujillo's second argument, the Commissioner contends that the ALJ applied the correct legal standards when evaluating LMHC Everhart's opinions and the ALJ's factual findings were supported by more evidence in the record than required under the substantial-evidence standard of review applicable here.  *Id.* at 7-11.  The Commissioner contends that the ALJ's discussion of the evidence must be read as a whole and that here the ALJ provided a detailed discussion and referenced many medical records which outlined largely normal examination findings that are inconsistent with LMHC Everhart's extreme limitations.  *Id.*  The Commissioner further contends that the existence of abnormal findings is perfectly consistent with the significant limitations the ALJ assessed, and that Ms. Trujillo's belief that certain abnormal findings should have led to a different conclusion is asking the Court to reweigh the evidence.  *Id.*

The Commissioner further contends that the ALJ properly noted that LMHC Everhart's severity ratings, while defined on the medical assessment form, nonetheless fail to suggest what specific workplace restrictions are warranted.  *Id.*  As such, the Commissioner contends that the ALJ properly concluded that such definitions do nothing to outline what workplace restrictions are required.  *Id.*  The Commissioner contends that based on this finding, along with largely normal objective findings in the record, a reasonable factfinder could easily discern the ALJ's reasoning.  *Id.*

In her Reply, Ms. Trujillo asserts that it is impossible to follow the ALJ's reasoning because he assessed that Ms. Trujillo could respond appropriately to supervision which is contrary to Dr. Walker's and Dr. Sturgis's assessments.  Doc. 26 at 1-2.  Ms. Trujillo further asserts that adding "occasional interaction" with supervisors only adds to the confusion.  *Id.*

Ms. Trujillo further asserts that the Commissioner's contentions concerning the ALJ's consideration of LMHC Everhart's opinion are flawed for three reasons.  *Id.* at 2-3.  First, Ms. Trujillo argues that the severity ratings on the form nearly mirror those used by the Administration to describe vocational impairments.  *Id.* at 2-3.  Second, Ms. Trujillo argues that the ALJ's consideration of whether the medical evidence was consistent with LMHC Everhart's opinion is a mere "summary conclusion" and fails to provide a meaningful discussion of the evidence.  *Id.*  And third, Ms. Trujillo argues that the ALJ's medical summary ignores positive findings from mental status examinations and focuses only on negative findings, such that the ALJ has engaged in cherry picking the evidence to support a finding of not disabled.  *Id.*

C.     **Legal Standards**

1.     **RFC Assessment**

Assessing a claimant's RFC is an administrative determination left solely to the Commissioner "based on the entire case record, including the objective medical findings and the credibility of the claimant's subjective complaints." *Poppa v. Astrue*, 569 F.3d 1167, 1170-71 (10th Cir. 2009); *see also* 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level or at the Appeals Council review level, the administrative law judge or the administrative appeals judge at the Appeals Council . . . is responsible for assessing your residual functional capacity."); *see also* SSR 96-5p, 1996 WL 374183, at *2 (an individual's RFC is an

administrative finding).[16]  In assessing a claimant's RFC, the ALJ must consider the combined

effect of all of the claimant's medically determinable impairments, and review all of the

evidence in the record.  *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); *see* 20 C.F.R.

§§ 404.1545(a)(2) and (3), 416.945(a)(2).  If the RFC assessment conflicts with an opinion from

a medical source, the ALJ must explain why the opinion was not adopted.  SSR 96-8p, 1996 WL

374184 at *7.   Further, the ALJ's "RFC assessment must include a narrative discussion

describing how the evidence supports each conclusion, citing specific medical facts . . . and

nonmedical evidence."  *Wells*, 727 F.3d at 1065 (quoting SSR 96-8p, 1996 WL 374184, at *7).

When the ALJ fails to provide a narrative discussion describing how the evidence supports each

conclusion with citations to specific medical facts and nonmedical evidence, the court will

conclude that the ALJ's RFC assessment is not supported by substantial evidence.  *See Southard*

*v. Barnhart*, 72 F. App'x 781, 784-85 (10th Cir. 2003).  The ALJ's decision must be sufficiently

articulated so that it is capable of meaningful review.  *See Spicer v. Barnhart*, 64 F. App'x 173,

177-78 (10th Cir. 2003) (unpublished).

### 2.    Evaluation of Medical Opinions

An ALJ evaluates the persuasiveness of medical opinions based on: (1) the degree to

which the opinion is supported by objective medical evidence and supporting explanation;

(2) how consistent the opinion is with other evidence in the record; (3) the source's treating

relationship with the claimant (i.e., how long/frequently the source treated the claimant and for

what purpose); (4) whether the source was specialized on the impairment on which he or she is

---

[16] The Social Security Administration rescinded SSR 96-5p effective March 27, 2017, only to the extent it is inconsistent with or duplicative of final rules promulgated related to Medical Source Opinions on Issues Reserved to the Commissioner found in 20 C.F.R. §§ 416.920b and 416.927 and applicable to claims filed on or after March 27, 2017. 82 Fed. Reg. 5844, 5845, 5867, 5869.

opining; and (5) any other factor tending to support or contradict the opinion.  20 C.F.R. § 404.1520c(c)(1)-(5).  The most important factors are "supportability ... and consistency."  20 C.F.R. §§ 404.1520c(a).  The factor of supportability "examines how closely connected a medical opinion is to the evidence and the medical source's explanations: 'The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions will be.' " *See Zhu v. Comm'r, SSA*, No. 20-3180, 2021 WL 2794533, at *5 & n.8 (10th Cir. July 6, 2021). (internal brackets and ellipsis omitted) (quoting, *inter alia*, 20 C.F.R. § 404.1520c(c)(1)). Consistency, by contrast, "compares a medical opinion to the evidence: 'The more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) will be.' " *Id.* (internal ellipsis omitted) (quoting, *inter alia*, 20 C.F.R. § 404.1520c(c)(2)).  The SSA does not give "any specific evidentiary weight, including controlling weight, to any medical opinion(s)."  20 C.F.R. §§ 404.1520c(a).

When evaluating the supportability and consistency of a medical source's opinions, "all the ALJ's required findings must be supported by substantial evidence, and he must consider all relevant medical evidence in making those findings."  *Lobato v. Kijakazi*, 2022 WL 500395, at *11 (D.N.M. Feb. 18, 2022) (quoting *Grogan*, 399 F.3d at 1262).  The ALJ also cannot "pick and choose among medical reports," using only portions of evidence that are favorable to his position and disregarding those that are not.  *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004).  This requirement, though, does not mean that the ALJ must discuss every piece of controverted evidence. See *Clifton*, 79 F.3d at 1009-10.  Rather, it merely requires the ALJ to show that he considered evidence unfavorable to his findings before making them.  *See id.* at

1010.  Further, the Commissioner may not rationalize the ALJ's decision post hoc, and "[j]udicial review is limited to the reasons stated in the ALJ's decision."  *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) (citation omitted).

    **D.**    <u>**The ALJ Properly Incorporated Limitations Related to Interacting With Supervisors and Responding to Supervision**</u>

The Court finds the ALJ properly incorporated Dr. Walker's and Dr. Sturgis's moderate limitation in accepting instructions and responding appropriately to criticism from supervisors. In rating Ms. Trujillo's social interaction limitations, both Dr. Walker and Dr. Sturgis found in Section I of the MRFCA that Ms. Trujillo was moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors.  They both then assessed in Section III of the MRFCA that Ms. Trujillo was able to "interact superficially with . . . supervisors."  The ALJ, in turn, similarly assessed that Ms. Trujillo was limited to "occasional interaction with . . . supervisors."  Tr. 1404.  Tenth Circuit case law supports that an assessment limiting a claimant to occasional interaction with supervisors adequately encapsulates a moderate limitation in the ability to accept instructions and respond appropriately to criticism from supervisors, as is the case here.  *See Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015) (holding that the Section III assessment that claimant could relate to supervisors and peers on a superficial work basis adequately encapsulated the Section I moderate limitation in claimant's ability to accept instructions and respond appropriately to criticism from supervisors); *see also Lee v. Colvin*, 631 F. App'x 538, 542 (10th Cir. 2015) (same).  It is undisputed, therefore, that the ALJ, having found Dr. Walker's and Dr. Sturgis's opinions persuasive, adopted their opinions with respect to Ms. Trujillo's ability to accept instructions and respond appropriately to criticism from supervisors.

Thus, it is evident that the ALJ properly adopted the consultants' opinions that Ms. Trujillo was limited to occasional interaction with supervisors. And yet Ms. Trujillo fails to provide any meaningful argument that the ALJ's RFC regarding her ability to respond appropriately to *supervision*, a limitation related to Ms. Trujillo's ability to sustain concentration and persistence, conflicts the consultants' opinions.[17]  *See Wells v. Colvin*, 727 F.3d 1061, 1071 (10th Cir. 2013) ("exact correspondence between a medical opinion and the mental RFC is not required"); *see also Tietjen v. Colvin*, 527 F. App'x 705, 709 (10th Cir. 2013) (finding that arguments raised in a perfunctory manner are waived) (citing *United States v. Hardman*, 297 F.3d 1116, 1131 (10th Cir. 2002)). As such, the Court finds that the ALJ's RFC matches the consultants' opinions such that no explanation is required.

### E.   The ALJ Properly Evaluated LMHC Everhart's Medical Opinion Evidence

The Court finds the ALJ adequately considered the consistency factor in evaluating LMHC Everhart's assessments. In the determination, the ALJ discussed and summarized the medical record evidence related to Ms. Trujillo's mental impairments as follows:

> Additional medical records included assessments and diagnoses of mental health conditions, including depressive disorder not otherwise specified (Ex. 1F/9), dysthymic disorder, and anxiety not otherwise specified (Ex. 1F/12). In 2019, the records included PTSD, generalized anxiety disorder with panic attacks, panic disorder (Ex. 8F/4; 9F/4), recurrent major depressive disorder (Ex. 10F/4), and skin-picking excoriation disorder (Ex. 23F/75). The records in 2020 included

---

[17] In rating Ms. Trujillo's *sustained concentration and persistence limitations*, both Dr. Walker and Dr. Sturgis found in Section I of the MRFCA that Ms. Trujillo was not significantly limited in her ability to "sustain an ordinary routine without special supervision." Tr. 89, 109.

Additionally, the ALJ identified three jobs that Ms. Trujillo could perform; *i.e.,* Mail Clerk, DOT code 209.687-026; Folder, DOT code 369.687-018; and Sorter, DOT code 361-687-014. Tr. 1417. Each of these jobs have a people rating of 8, which represents the lowest possible human interaction (attending to work assignment instructions or orders of supervisor – no immediate response required unless clarification is needed), and none of the jobs identified require talking (the expressing or exchanging of ideas to clients, the public, or other workers). *See* Dictionary of Occupational Titles Appendix B: Explanation of Data, People, and Things; *see also* Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles (1993), pp. 203, 313, 343.

generalized anxiety disorder with panic attacks, panic disorder, and major depressive disorder (Ex. 25F/9).

The treatment records showed the Claimant reported psychiatric symptoms including anxiousness, restlessness, picking at scabs on her skin when anxious, depressed mood, insomnia (Ex. 1F/6), fatigue, and difficulty concentrating, and noting the Claimant saw a counselor on a regular basis approximately once or twice per month (Ex. 1F/7).  Additional records showed reports of anxiety, depression, and PTSD (Ex. 3F/5, 7F/1), with difficulty sleeping, difficulty concentrating, feeling down or depressed, feeling hopeless, feelings of guilt, and little interest or pleasure in doing things (Ex. 3F/7).  In 2019, the records noted the Claimant reported intrusive thoughts, trouble sleeping, nightmares, panic, problems with judgment and making decisions, avoiding being around people and in public (Ex. 8F/1), feel down and depressed, feeling hopeless, racing thoughts (Ex. 8F/7), difficulty concentrating (Ex. 8F/12), feeling more anxious, daytime tearfulness (Ex. 10F/11), and anxiety that cause her to pick at her skin (Ex. 21F/4; 23F/72; 31F/1).  The records in 2020 showed the Claimant reported anxiety, depression, and PTSD (Ex. 25F/2), with sadness, traumatic memories, panic attacks, worry, hopelessness, feeling bad about herself, trouble concentrating (Ex. 25F/3), fear, compulsive thoughts, poor judgment, and racing thoughts (Ex. 25F/5).

However, the treatment records also showed the Claimant reported her depression, had been doing well on medication (Ex. 1F/6), and that she denied hopelessness, denied recurrent thoughts of death, denied suicidal thoughts, and denied homicidal plan or intent (Ex. 1F/7; 3F/7).  In 2019, the records noted the Claimant denied depression (Ex. 5F/17), denied difficulty concentrating, denied feelings of guilt, denied impaired judgment, denied inappropriate interactions, denied inconsolability, denied difficult sleeping, denied memory problems, denied speech changes (Ex. 8F/7), and denied sleep disturbance (Ex. 21F/6; 23F/74).  The records in 2020 showed the Claimant denied confusion (Ex. 23F/25, 88), denied paranoia, denied restlessness, and denied thoughts of death or suicide (Ex. 25F/5).  The most recent records prior to the December 2020 DLI noted the Claimant denied any psychiatric or behavioral symptoms, including the Claimant denied suicidal ideas (Ex. 30F/4), denied confusion, and denied disorientation (Ex. 30F/9).

Additional examination records indicated mental health signs and findings, including depressed and flat affect (Ex. 1F/12), depressed and anxious mood, constricted affect, pressured speech, and circumstantial thought process (Ex. 3F/8; 7F/4).  In 2019, the exams indicated slowed activity, depressed and anxious mood, depressive thought content, impaired attention and concentration, partial insight, and mild impairment in judgment (Ex. 8F/3).

However, the exam records also indicated relatively unremarkable psychiatric findings including full orientation (Ex. 1F/5), negative posture and motor behavior findings, negative grooming and hygiene findings, negative speech findings, negative mood findings, negative coherency and thought content findings, negative

perception or orientation findings, negative attention and concentration findings, negative memory findings, and negative information findings (Ex. 1F/8). Additional exams indicated full orientation (Ex. 1F/11), normal behavior, normal thought content (Ex. 1F/12), intact cognitive function (Ex. 2F/2), normal appearance, average eye contact (Ex. 3F/7), normal perception, no hallucinations, no delusions, normal cognition, average intelligence, normal insight, normal judgment (Ex. 3F/8; 7F/4), alert mental status, full range of mood and affect, good eye contact, clear speech (Ex. 5F/7), pleasant affect, cooperative behavior, good judgment, and good insight (Ex. 5F/10). In 2019, the exams indicated alert mental status, pleasant affect, intact cognitive function, cooperative behavior, good eye contact (Ex. 5F/2), normal posture, cooperative attitude, full affect, logical thought process, no delusions, average intelligence (Ex. 8F/3), euthymic mood, clear speech (Ex. 8F/13), full orientation, normal mood and affect, normal behavior (Ex. 23F/78), normal judgment, and normal thought content (Ex. 23F/83). The examinations in 2020 indicated alert mental status, full orientation, normal behavior (Ex. 23F/26; 27F/19), calm demeanor, cooperative behavior, no compulsive behavior, sufficient fund of knowledge, sufficient language, no flight of ideas, no grandiosity, no memory loss, no mood swings, normal insight, normal judgment, normal attention span and concentration, no pressured speech (Ex. 25F/8), and normal mood (Ex. 26F/23). The most recent exam records prior to the December 2020 DLI indicated full orientation, alert mental status, normal mood, and normal behavior (Ex. 30F/5, 12).

Tr. 1406-08. The record supports the ALJ's discussion of the medical evidence related to

Ms. Trujillo's mental impairments. *See* Section III.A, *supra*.

The ALJ also specifically discussed mental status exams as follows:

Mental status exam records indicated unremarkable psychiatric findings including full orientation (Ex. 1F/5), negative posture and motor behavior findings, negative grooming and hygiene findings, negative speech findings, negative mood findings, negative coherency and thought content findings, negative perception or orientation findings, negative attention and concentration findings, negative memory findings, and negative information findings (Ex. 1F/8). Additional exams indicated full orientation (Ex. 1F/11), normal behavior, normal thought content (Ex. 1F/12), intact cognitive function (Ex. 2F/2), normal appearance, average eye contact (Ex. 3F/7), normal perception, no hallucinations, no delusions, normal cognition, average intelligence, normal insight, normal judgment (Ex. 3F/8; 7F/4), alert mental status, full range of mood and affect, good eye contact, clear speech (Ex. 5F/7), pleasant affect, cooperative behavior, good judgment, and good insight (Ex. 5F/10). In 2019, the exams indicated alert mental status, pleasant affect, intact cognitive function, cooperative behavior, good eye contact (Ex. 5F/2), normal posture, cooperative attitude, full affect, logical thought process, no delusions, average intelligence (Ex. 8F/3), euthymic mood, clear speech (Ex. 8F/13), full orientation, normal mood and affect, normal behavior (Ex. 23F/78), normal

judgment, and normal thought content (Ex. 23F/83). The examinations in 2020 indicated alert mental status, full orientation, normal behavior (Ex. 23F/26; 27F/19), calm demeanor, cooperative behavior (Ex. 25F/5), no agitation, no anhedonia, appropriate mood and affect, appropriate behavior, no compulsive behavior, sufficient fund of knowledge, sufficient language, no flight of ideas, no grandiosity, no memory loss, no mood swings, normal insight, normal judgment, normal attention span and concentration, no pressured speech (Ex. 25F/8), and normal mood (Ex. 26F/23). The most recent exam records prior to the December 2020 DLI indicated full orientation, alert mental status, normal mood, and normal behavior (Ex. 30F/5, 12).

Tr. 1409. The record supports the ALJ's discussion of mental status exams. *See* Section III.A.,

*supra*.

As for his evaluation of LMHC Everhart's assessments, the ALJ explained as follows:

On June 14, 2019, treating provider Emily Everhart, LMHC, prepared a medical source statement (Ex. 11F). Ms. Everhart noted the Claimant had PTSD and anxiety. Ms. Everhart also noted exam findings that the Claimant was attentive, receptive, cooperative, articulate, and engaged during sessions. Ms. Everhart opined the Claimant experienced significant functional impairment in her daily life, and that the Claimant would be appropriate for psychiatric disability.

I find Ms. Everhart's assessment to be partially persuasive, only where it is consistent with the overall record showing the Claimant has medically determinable PTSD and anxiety, as discussed above. For instance, other medical records included assessments of PTSD, generalized anxiety disorder with panic attacks, and panic disorder (Ex. 8F/4; 9F/4). I note that Ms. Everhart's review did not include positive findings on exam to support any specific functional limitations expressed in vocationally relevant terms (such as specific time limits, or using terms such as occasionally or frequently). I also note that Ms. Everhart's reference to unremarkable exam findings such as attentiveness and cooperative behavior does not support any specific functional restrictions. Further, I note that Ms. Everhart's review was relatively vague ("significant functional impairment") with specificity as to duration or type of functional restrictions. Finally, I also recognize[] the fact that this opinion, regarding disability, relates to a legal conclusion reserved for the Commissioner. I did not provide articulation about the evidence that is inherently neither valuable nor persuasive to the issue of whether the Claimant is disabled, including such legal conclusions reserved for the Commissioner.

I find Ms. Everhart's January 13, 2020 assessment to be partially persuasive generally, for similar reasons, noting that Ms. Everhart referenced "positive progress during the span of our treatment together" without specific expression of functional restrictions based on objective exam findings (Ex. 15F). Ms. Everhart's January 2020 review noted symptoms of compulsive and destructive behavior,

issues with self-soothing, anxiety attacks, anhedonia, and emotional instability, but also noted fair prognosis, and that the Claimant was receptive and cooperative with treatment.  Ms. Everhart further referenced symptoms of decreased energy, feelings of guilt, problems with impulse control, intrusive recollections, recurrent obsessions, emotional withdrawal, disorientation, emotional lability, vigilance, and easy distractibility.  Ms. Everhart opined the Claimant had "serious limitations" in the ability to sustain an ordinary routine, work in coordination with others, respond appropriately to change in routine work settings, understand and remember detail instructions, interact appropriately with the public, and maintain socially appropriate behavior.  Ms. Everhart also opined the Claimant was "unable to meet competitive standards" in the ability to maintain regular attendance, complete a normal workday, perform at a consistent pace, deal with work stress, carry out detailed instructions, set realistic goals, and deal with stress of semi-skilled and skilled work.  Ms. Everhart further opined the Claimant would miss more than four days of work per month due to impairments or treatment.  Ms. Everhart also noted the Claimant could manage benefits in her own best interest.

I find Ms. Everhart's January 2020 review to be partially persuasive, generally, only where it is consistent with the overall record showing Claimant has medically determinable mental impairments, as discussed above.  For instance, other medical records included assessments of PTSD, generalized anxiety disorder with panic attacks, and panic disorder (Ex. 8F/4; 9F/4).  I note that Ms. Everhart's January 2020 review also did not include specific objective findings on exam to support any of the relatively extreme levels of limitation, particularly an inability to meet competitive standards, or that the Claimant would miss any number of days of work.  I also note that Ms. Everhart's January 2020 review was also relative[ly] vague ("serious limitations"; "unable to meet competitive standards") without a function by function analysis of the Claimant's impairments and related functional restrictions expressed in vocationally relevant terms (such as specific time limits, or using terms such as occasionally or frequently).  I also recognize[] the fact that this opinion like Ms. Everhart's prior review, regarding "appropriate for psychiatric disability," relates to a legal conclusion reserved for the Commissioner.  I did not provide articulation about the evidence that is inherently neither valuable nor persuasive to the issue of whether the Claimant is disabled, including such legal conclusions reserved for the Commissioner.

Tr. 1412.

Ms. Trujillo raises three arguments that the ALJ failed to consider the consistency factor in evaluating LMHC Everhart's assessments.  *See* Section III.B., *supra*.  The Court addresses each in turn.

###### 1.      <u>Other Medical Treatment Notes</u>

The ALJ considered CNP Lobaugh's treatment notes when evaluating LMHC Everhart's assessments for consistency.  Ms. Trujillo cites CNP Lobaugh's treatment notes and argues they "repeatedly documented numerous abnormal objective mental status finding[s] including: poor insight, poor judgment, impaired attention/concentration, anhedonia, paranoia, mood swings, apathetic appearance, and slowed activity."  Doc. 19 at 22.  Notably, however, the ALJ, in his lengthy and detailed discussion of the relevant medical evidence, specifically cites certain of CNP Lobaugh's treatment notes that Ms. Trujillo relies on here.[18]  Tr. 1406-08.  Further, in doing so, the ALJ details Ms. Trujillo's reported complaints to CNP Lobaugh, along with his findings, both positive and negative, on physical and mental status exams.  *Id.*  The Court, therefore, finds the ALJ's discussion of the evidence sufficiently demonstrates that he in fact considered and compared LMHC Everhart's assessments with CNP Lobaugh's treatment notes when evaluating the consistency of her opinions with evidence from other medical sources.  *See Cox v. Saul*, 2020 WL 6701425, at *6 (D.N.M. Sept. 9, 2020) (finding ALJ's brief statement that certain assessed limitations were "inconsistent with the evidence from all medical/nonmedical sources" was adequate for purposes of addressing consistency where the ALJ's decision previously set forth and discussed evidence that was both consistent and inconsistent).  Additionally, the ALJ's discussion of the medical evidence record demonstrates he considered and compared LMHC Everhart's assessments of Ms. Trujillo's ability to do work-related mental

---

[18] The ALJ cites Ex. 8F/11-14 – CNP Lobaugh's April 8, 2019, treatment note; Ex. 8F/7-10 – CNP Lobaugh's May 6, 2019, treatment note; Ex. 8F/1-4 – CNP Lobaugh's June 24, 2019, treatment note; and Ex. 10F/11-15 – CNP Lobaugh's August 1, 2019, treatment note.  Tr. 1406-08.

activities with other treatment notes and medical opinion evidence specifically addressing

Ms. Trujillo's mental impairments.[19]

Thus, inasmuch that Ms. Trujillo cites objective medical evidence that arguably is

consistent with LMHC Everhart's assessments, her argument remains unavailing as it functions

as an invitation to reweigh the evidence before the ALJ, contrary to the charge of the applicable

standard of review. *See Deherrera v. Comm'r, SSA*, 848 F. App'x 806, 808 (10th Cir. 2021)

(setting out the reviewing court's standard of review and noting that it does not "reweigh the

evidence or retry the case").  Recently, the Tenth Circuit eschewed the same type of request:

> [Claimant] advances several individual criticisms of the ALJ's analysis of the
> evidence, asserting that the medical evidence could have supported a finding of
> greater disability.... But while these arguments may show the ALJ could have
> interpreted the evidence to support a different outcome, they, at most, amount to
> invitations to reweigh the evidence, which [the reviewing court] cannot do.

*Deherrera*, 848 F. App'x at 810.

Additionally, while the ALJ cannot pick and choose among medical reports or use only

portions of evidence that are favorable to his position and disregard those that are not, this

requirement does not mean that the ALJ must discuss every piece of controverted evidence.  *See*

*Clifton*, 79 F.3d at 1009–10.  Rather, it merely requires the ALJ to show that he considered

evidence unfavorable to his findings before making them.  *See id.*  The ALJ did so here.  And

importantly, the prohibition on "picking and choosing" does not mean ALJs cannot make a

finding of non-disability after weighing all probative evidence on either side of the issue and

finding the evidence of non-disability more persuasive.

---

[19] The ALJ also cites, *inter alia*, treatment notes prepared by mental healthcare providers Dr. Vidya Subramanian (Ex. 1F/6-9, 1F/9-11); LCSW Cirilo Sandoval (Ex. 3F/5-10); and PMHNP Stephen Mason (Ex. 25F/5-11).  Tr. 1406-08.

The ALJ also evaluated other medical opinion evidence related to Ms. Trujillo's ability to do work-related mental activities.  Tr. 1410-11 (State agency psychological consultants' assessments); Tr. 1412-13 (CNP Lobaugh's June 24, 2019, "To Whom It May Concern" letter); and Tr. 1414-15 (examining consultant John Owen, Ph.D.'s assessment).  Ms. Trujillo does not raise any issues with respect to the ALJ's evaluations of the medical opinion evidence.

2.      **Function-by-Function Analysis**

The Court finds the ALJ did not err in finding LMHC Everhart's January 13, 2020, questionnaire vague for failing to explain Ms. Trujillo's maximum capabilities.  Ms. Trujillo argues that LMHC Everhart's questionnaire form defines the severity ratings she considered when rating Ms. Trujillo's limitations and that LMHC Everhart's ratings are similar to, or consistent with, severity ratings used by state agency consultative examiners.  Ms. Trujillo argues, therefore, that discounting LMHC Everhart's assessment based on these terms being vague "is a pretextual subterfuge to avoid the burden of meaningful consideration."  The Court is not persuaded.  Here, the ALJ's explanation of vagueness is not as much directed at the severity ratings as it is at the absence of a function-by-function assessment in vocationally relevant terms of Ms. Trujillo's maximum capabilities to perform sustained work activities based on the ratings.[20]  In other words, LMHC Everhart's questionnaire is silent with respect to what Ms. Trujillo is able to do despite the functional limitations LMHC Everhart noted.  Thus, Ms. Trujillo's argument that the ALJ's explanation failed to consider the consistency between the severity ratings employed by LMHC Everhart and those used by the Administration is misplaced.

That said, the Court is mindful that "[t]he duty to perform a function-by-function assessment belongs to the ALJ, not the medical source, and whether a medical source has provided function-by-function opinions is *not* one of the factors ALJs must consider in weighing that source's opinions."  *McGehee v. Saul*, 2019 WL 6219507, at *8 (D.N.M. Nov. 21, 2019)

---

[20] The ALJ specifically states, "I also note that Ms. Everhart's January 2020 review was also relative[ly] vague ('serious limitations'; 'unable to meet competitive standards') without a function by function analysis of the Claimant's impairments and related functional restrictions expressed in vocationally relevant terms (such as specific time limits, or using terms such as occasionally or frequently)."  Tr. 1412.

(citations omitted) (emphasis in original). Courts, however, have allowed ALJs to consider it when weighing opinions. *See Kristen R. v. Saul*, 2020 WL 1433486, at *8 (D. Kan. Mar. 24. 2020) ("[T]he ALJ has the responsibility to weigh medical opinions, and whether that opinion explains the functional limitations resulting from a claimant's impairments is a factor tending to support or contradict the medical opinion and may be considered and relied upon by the ALJ.") (internal citations omitted). Further, Ms. Trujillo does not identify any case law prohibiting an ALJ from considering the lack of a function-by-function analysis as one of the many factors used to weigh the persuasiveness of a medical opinion. *See A.G. v. Comm'r of Soc. Sec. Admin.*, 2024 WL 1046926, at *8 (D. Colo. Mar. 4, 2024) (finding case law does not prevent an ALJ from considering the lack of a function-by-function analysis and that the ALJ did not err in discounting an opinion as vague where provider used rating terms similar to state agency examiners but did not explain claimant's maximum capabilities). But even if the ALJ improperly considered the absence of a function-by-function analysis in LMHC Everhart's assessment, the ALJ considered the most important factors in evaluating LMHC Everhart's assessment, *i.e.,* it was not supported by objective findings on exam and was inconsistent with the medical record overall. *See Bainbridge v. Colvin*, 618 F. App'x 384, 390 (10th Cir. 2015) (discussing that where ALJ considered an opinion "vague and conclusory" because it was not based on a function-by-function analysis nonetheless provided legitimate reasons for discounting the opinion).

### 3.   Discussion of Medical Evidence

Third, Ms. Trujillo broadly argues, without more, that the ALJ failed to adequately consider consistency in evaluating LMHC Everhart's assessments because he failed to discuss any of the medical evidence "other than Plaintiff's diagnosis with generalized anxiety and panic

attacks" or meaningfully tie his evaluation to any evidence of record.  The Court disagrees.  As set out herein, the ALJ discussed in great detail the medical evidence record related to Ms. Trujillo's mental impairments during the relevant period of time.  Moreover, the Court finds the ALJ's discussion of the evidence read as a whole and his evaluation of LMHC Everhart's assessments in the context of that discussion are sufficiently articulated such that the Court is capable of following his reasoning in conducting its review.

In sum, the Court finds the ALJ meaningfully considered consistency in evaluating LMHC Everhart's opinions.

## IV.  <u>Recommendation</u>

For all of the reasons stated above, the Court finds that Ms. Trujillo's Motion is not well taken.  The Court, therefore, recommends that the Motion be **DENIED.**

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

---

**JOHN F. ROBBENHAAR**
**United States Magistrate Judge**